**RECEIVED**
**APR 26 2018**
**GREENVILLE, S.C.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EARL GAVIN<br>Plaintiff. | )<br>)<br>)<br>) Case No 7:18-cv-00523-AMQ-JDA |
| vs | )<br>) |
| EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION<br>LLC; EQUIFAX, INC.<br>Defendants | )<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF RESPONSE TO DEFENDANT TRANSUNION LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW, Plaintiff, has files his Reply to Defendant Transunion LLC opposition to Plaintiff Motion for leave to Amended Complaint, and would respectfully show the Court as follows:

### I. FACTUAL BACKGROUND

Plaintiff filed his Original Complaint on February 22, 2018. On March 29, 2018 Trans Union filed its Motion to Dismiss his Original Complaint. Plaintiff filed his First Amended Complaint with the Court on April 5, 2018 alleging more specific facts regarding his claim and adding a defendant. Plaintiff made two very detailed and specific requests for his **full consumer file disclosure** under 15 U.S.C. § 1681g in an effort to obtain and review **ALL** information that Trans Union had in its files relating to him as a consumer. The FCRA requires, among other obligations, that CRA's clearly and accurately disclose to a requesting consumer [a]ll information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1). Mr. Gavin did not ask for a credit report,

a credit score, risk score, predictors or things relating to the processes and procedures of how Trans Union creates reports, maintains, analyzes or disseminates information relating to him to its customers. He simply requested a **full consumer file disclosure** of what Trans Union was in possession of in any form or in any place that relates specifically to him as a consumer. It was a very unambiguous and straightforward request made under the law. In response to Plaintiffs multiple requests Trans Union provided nothing more than an 8 page document twice with the first page greeting **Enclosed is the TransUnion Personal Credit Report** that you requested. Mr. Gavin did NOT request a credit report. The personal credit report" provided by Trans Union contained a mere 2 V2 pages of actual consumer information that related to Mr. Gavin while on the front page of the report is the comment You have been on our files since 10/01/1992. (emphasis added) Plaintiff did not request a credit report but instead made a request for his **full consumer file disclosure** of ALL information contained in his Trans Union files and that is not what he received after multiple requests.

## II. MOTION TO DISMISS UNDER RULE 12 (b)(6)

Plaintiffs First Amended Complaint should not be dismissed because it states a plausible cause of action under Twombly. A complaint is a notice pleading. Here the Defendant appears to believe that Plaintiff must provide all evidence to prove his claims at the pleading stage without the benefit of discovery. Defendant argues that Mr. Mack merely recites the words of the statute states his claim in conclusory fashion and only makes conclusory allegations. Trans Union evidently argues that Plaintiff stating the specific statute upon which his claim rests means nothing and should be ignored.

Plaintiff, as clearly stated in his First Amended Complaint, made multiple very specific requests of Trans Union and it failed to comply with the requirements of 15 U.S.C. § 1681g(a)(l) under which it operates as a consumer reporting agency which is the basis of the claim made. Plaintiff is not required to state all facts and prove his case at the pleading stage. Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

### III. STANDARD FOR REVIEW

When considering Defendant s motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will entitle Plaintiff to relief should the court grant Defendant's motion. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Scheer v. Rhodes, 416 U.S. 232, 236 (1974). The question therefore is whether in the Light most favorable to the plaintiff and with every doubt resolved in his behalf, the Complaint states any valid claim for relief. Beanal v. Freeport McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999). If the factual allegations in Plaintiffs complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant's motion.

### IV. ARGUMENT AND AUTHORITIES

**PLAINTIFF S AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)**

1. Plaintiffs Complaint Fails to State Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g Plaintiff made a very specific request for his full consumer file disclosure pursuant to 15U.S.C. § 1681g to be sure that there would be no misunderstanding as to exactly what it was he was requesting anticipating that Trans Union may respond by sending just his conventional credit report in response to his request. When he received the first response which was exactly as anticipated (a personal credit report) he made a second and final very detailed request to be sure that Trans Union knew without any doubt what he was requesting and entitled to under the FCRA. Once again Trans Union responded with nothing more than a personal credit report which was not responsive to his request for his full consumer file disclosure as required by the statute in its plain language. Mr. Gavin did NOT make a request for a credit report. He made no request for any credit score, other risk scores or predictors or any ancillary information outside of the information that was specific to him as a consumer. He made no request for any information relating to any processes or procedures of Trans Union or how it manages any information about him in its systems. Mr. Gavin's complaint pleads in detail precisely what he was asking for, what Trans Union failed to do to comply with his request and his complaint is supported by exhibits.

2. Consumer file is defined as the information contained in a consumer's disclosure/credit report In its arguments for dismissal Trans Union immediately begins by conflating the words disclosure and credit report (disclosure/credit report) arguing they are synonymous. Nowhere in the FCRA is the term disclosure/credit report used. A credit report is a

disclosure of course... of credit information. That does not mean it is necessarily a disclosure of all information recorded and retained in a CRA's file regarding a consumer at the time the report is generated. The plain language of the FCRA requires, among other obligations, that CRAs clearly and accurately disclose" to a requesting consumer [a] 11 information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(l). The court should take note that it does not say [a]ll CREDIT information in the consumer's file.... (emphasis added).

Trans Union is sorely mistaken when stating that to prevail on a claim based on section 1681g(a)(l), then, a plaintiff must adequately plead that the CRA failed to provide the consumer with the consumer file. A legal mandate" set forth as a "requirement under law when not met after conditions precedent to the requirement have been established and the corresponding required action to trigger such an obligation under law takes place does not rise to the level of a "legal conclusion." 15 U.S.C. §1681g is just such a mandate. Trans Union, by cherry picking language and use of a clearly non-analogous case (Gillespie) would have the court accept that Congress did not mean exactly what it said but meant to use words that are simply not there.

The statute does not say "a consumer reporting agency shall provide the consumer with a consumer file." The Gillespie case is a glaring red herring. First the plaintiff was pursuing what the statute clearly outlines as "ancillary information" which, since it could not be included in any report shared with a third party under any circumstances, does not have to be shared with the consumer either. Here, the Plaintiff AT NO TIME requested any such information. The Gillespie case is simply not analogous to this case. Plaintiffs request letter was absolutely specific as to what he was asking for. In fact the language

used to describe his request was directly quoted from the statute. The wizardry employed by Trans Union in this instance arises from two tactics; first to misrepresent the language of the statute and the interpretation of it within the FTC s official publication (fn2) and second, by failing to note other controlling sections in regard to 1681g in the statute.

The FCRA defines many different types of "files" all of which are considered to be "consumer files" such as files used in compiling investigative reports, employment reports, insurance related reports etc. however it is quite specific in relation to section 1681g. There the definition is clear (page 31 of 40 yrs Doc.):

*Section 603 g defines file, when used in connection with information on any consumer, to mean all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.*

The definition does NOT contain the words consumer file". The definition does not identify any type or sub-type of information, particular type of file or limitation as to the type of information contained in a file.

In addition the FTC interpretation takes the definition of what information is referred to by section 1681g even further (page 32 of 40 years doc) under "SCOPE" - "The term "file" includes all information on the consumer that is recorded and retained by a CRA - regardless of how the information is stored - that has been or might be provided in a consumer report on that consumer. The term includes such information that a CRA has kept for archival purposes, because the definition includes all data "retained" and "stored" by the CRA."

This is where the omission of related sections comes into play. The phrase **"has been or might be"** is key. For instance: Section 605(a) provides time limits beyond which CRA's cannot include information in consumer reports, subject to exceptions set forth in

605(b). Two sub-sections of 605(a) are **key** to the type of information retained in a CRAs files on a consumer which cannot be included in a conventional "credit report" such as can be obtained by a consumer through annualcreditreport.com, with important exceptions that the average consumer is not even aware of (page 55 of 40 yrs doc):

**PROVISION LIMITED TO ADVERSE INFORMATION**

4. *The seven-year reporting period applies only to "adverse" information that casts the consumer in a negative or unfavorable light. CRA's are not bound by that seven-year limit in reporting dates of employment and educational histories, because such dates are not adverse information.*

**RETENTION OF INFORMATION IN FILES**

5. *CRAs may retain adverse information described in subsection (a)* ***and furnish it in*** *reports for purposes that are exempt under subsection (b), described below. For example, the CRA may retain obsolete information for the purpose of furnishing it to persons engaged in (1) credit transaction or the underwriting of life insurance involving a principal amount of $150,000 or more, or (2) the employment of any individual with an annual salary expected to equal $75,000 or more, (emphasis added)*

Section 605(b) states that the time period limitations in section 605(a) **are not applicable in the case of any consumer credit report** to be used in connection (1) a credit transaction involving, or which may reasonably be expected to involve, a principle amount of $150,000 or more; (2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $150,000 or more; (3) the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more." (emphasis added)

These sections would lead even an unsophisticated reader to understand that when information is "deleted" by reason of time limit prohibitions for <u>inclusion in a credit report</u> it isn't really deleted" at all. Rather it is "suppressed" and **may have been or**

**might be** disclosed without the consumer's knowledge to a third party under certain circumstances. This is just one example of the type of information which might be "archived or considered "obsolete" by the CRA. Section 1681g clearly states that this information must be disclosed to the consumer when that consumer properly asks for it.

The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored". 15 U.S.C. § 1681a(g). It couldn't be any clearer as to what is supposed to be provided upon a consumer's PROPER request.

The United States Court of Appeals for the Seventh Circuit has found that [t]he term **file** denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report* on That consumer Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir.2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). The Seventh Circuit has held that, although a consumer's **entire file** need not be disclosed upon request, complete copies of their consumer reports must be disclosed upon request. Id. The court should note the plural nature of "reports."

The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report", Cortez v. Tra s Union, LLC, 617 F.3d 688, 711 (3d Cir.2010), or by using "corporate organization, reorganization, structure, or

restructuring. to circumvent reporting requirements. 12 C.F.R. § 1022.140(a). Jones v. Equifax o. 3:15-cv-l 12-RJC-DSC United States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at the plain language of the statute and case law.

### 3. Plaintiff admits he received two copies of his consumer disclosure

Plaintiff readily admits he received two copies of a "personal credit report which is the terminology used by Trans Union and is **one** **type of disclosure**. Mr. Gavin very specifically asked for <u>something other than a credit report</u>. He **requested a full consumer file disclosure** which would include [a]ll information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(l). The FCRA defines "file" as all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored. § 1681a(g) The fact that Trans Union sent Mr. Gavin a credit report does not equate to it providing his requested **full consumer file disclosure** UNLESS it has no other information in any of its files that relates to Mr. Gavin whether it **has been** or **might** be furnished in a consumer report of **any** kind. If that is the case why doesn't Trans Union just categorically state it has no other information in its files relating to Mr. Gavin in its motion to dismiss to bring this case to an end right now?

Trans Union collects and maintains consumer information on hundreds of millions of consumers.1 When according to its own personal credit report where it states You have been on our files since 03/01/2001 it is not reasonable to believe that Mr. Gavin is somehow an exception and Trans Union has no other information whatsoever about him than what was contained in his 2 page personal credit report, (emphasis added) Mr.

Gavin is a consumer, has a driver's license, is a renter, has checking accounts, a Sam's Club membership since 2001 and has been a property owner and is 50 years of age. Is it plausible for any reasonable person to believe that Trans Union has no other information on Mr. Gavin in its file(s) that it was required by law to have provided in response to Mr. Gavin's requests? Mr. Gavin does not believe it is and that the truth is that Trans Union did not provide ALL information in its file(s) as it was required to do in response to his multiple very specific requests made under the FCRA.

Again, the court needs to stay on point that this case isn't about whether any information related to Mr. Gavin that Trans Union has or may have provided to a third party is accurate or not. The issue here is whether there was information in Trans Union's files at the time of Mr. Gavin's request that was required to have been provided to him pursuant to his lawful request and wasn't. THAT is the sole claim in this lawsuit and the only issue before this Court. Defendant's argument that Mr. Gavin received the **full consumer file disclosure** that he specifically requested has no merit and should be rejected by the Court.

**4. Plaintiff provides no actual basis for his assertion that the Trans Union Credit Report: was not his full consumer file disclosure**

While in the past Mr. Gavin has used the website annualcreditreport.com to request a copy of his credit report in this case he did something different as stated in his First Amended Complaint. With the advent of the hack of the Equifax database and the ensuing media attention and firestorm it has created, Mr. Gavin became even more aware that there appeared to be additional information about a consumer in a consumer reporting agency's files than what was provided in a credit report that he obtained from


annualcreditreport.com. This caused him to dig even deeper than he already had been to conduct research about the consumer reporting agencies and what kind of disputes there may have been in the courts as to the information they possess on consumers and the accuracy of it. He also intensified his already ongoing search for information in the public domain that might indicate there was more information that the CRA's possessed in their files on consumers than was being disclosed in the credit reports provided by them either through annualcreditreport.com or directly upon request to the individual CRA's. Of course, if a consumer only requests their credit report and that is forwarded to them in response to the request then the request has been satisfied. That is not the case here. After substantial reading and research it became apparent there was a considerable amount of information that was being provided about consumers to a plethora of entities and persons that was not necessarily directly related to specific credit accounts such as a mortgage, credit card or car loans yet which could potentially affect the consumer s creditworthiness or ability to do business, obtain employment, obtain housing or could affect numerous other aspects of a consumer's life. In one extreme case there was derogatory information in a consumer's file that stated in part:

*The file shows that you are very much disliked by your neighbors at that location [Millstone's Washington residence], and were considered to be a 'hippy type1. The file indicates that you participated in many demonstrations in Washington, D. C., and that you also housed out-of-town demonstrators during demonstrations. The f le indicates that these demonstrators slept on floors, in the basement and wherever else there was room on your property. The file shows that you were strongly suspected of being a drug user by neighbors but they could not positively substantiate these suspicions. You are shown to have had shoulder length hair and a beard on one occasion while living in Washington, D. C. The file indicates that there were rumors in the neighborhood that you had been evicted by neighbors from three previous residences in Washington, D. C. prior to living at the 48th Street, N. W. location.*

which caused his auto insurance to be cancelled as a result of the credit report provided by O'Hanlon Reports, Inc., a CRA.1 The information was later found to be patently false and uncorroborated.

Needless to say, Plaintiff was appalled that such false information was obtained and even possessed about a consumer by a CRA and could have that kind of dramatic effect on a consumer's life. Upon further research Plaintiff found numerous other court cases brought in a number of jurisdictions involving erroneous criminal information that was provided by CRA's to potential landlords in certain instances and erroneous employment information provided by CRA's s to potential employers where the consumer was denied employment as a result just to name several. It became obvious there was more information being provided to certain customers of CRA's than just listings of mortgage, credit card, car loan and other similar credit accounts that a consumer receives in his credit report and in a number of cases that information was erroneous with negative consequences to the consumer.

For far too long it would appear that Trans Union and other major CRA's have diligently conditioned the courts, regulators and the public to think of a full file disclosure (which is precisely what a consumer is entitled to under the law **when a proper request is made**) as a credit report which contains only certain information but not by any means all information they retain about consumers so what is provided and potentially subject to dispute is minimal. Clearly there is a financial incentive for them to do so to minimize costs, in the name of profits, and skirt the requirement of providing complete file

---

1 Millstone v O Hanlon Reports, Inc. 383F.Supp. 269 (1974)

disclosures when requested and dealing with any disputes of the information contained in those files that might be erroneous.

The court should also take note that the annualcreditreport.com website (which was created and is maintained by the major CRA's) has <u>NO place on it where a consumer can request their full consumer file disclosure</u> (which is precisely what a consumer is entitled to under the law) but instead only provides the consumer with the option to request a credit report. How convenient Sometimes one just has to look at the obvious. <u>If Congress only intended that a consumer get a credit report upon a request they would have simply stated exactly that in the statute rather than being very specific in the language of § 1681g stating a full file disclosure</u>. A common sense reading of the plain language of the statute reveals there was to be more than just a credit report provided to the consumer upon a request for their full file disclosure so that the consumer could help the CRA assure accuracy of the information contained in its files as they are mandated to do. A failure of Trans Union and the other CRA s to provide ALL information on a consumer in their file(s) upon a proper request so it can be checked for accuracy flies in the face of their mandate to assure maximum accuracy of the information in their files which is a duty they have under the FCRA.

Mr. Gavin made a request to LexisNexis (which is a company comparable to Equifax, Trans Union and Experian in size and a competitor) for his full consumer file disclosure as stated in his First Amended Complaint. In response he received documents with the greeting Thank you for contacting LexisNexis to obtain your **Full File Disclosure** with <u>**eight different consumer reports included just like Gillespie stated must be done**</u>.

(Emphasis added) The disclosure from LexisNexis was 109 pages of information (some of which was erroneous and dates as far back as 1990) as stated in Plaintiffs First Amended Complaint.

Trans Union would have this court believe that the only kind of consumer report that exists is a credit report so that is all the data they had to provide to Mr. Gavin upon his request which is far from the truth. Plaintiff became aware of two videos available on Youtube where Trans Union utilizes audio/video presentations to promote its abilities to provide immediate information to its customers as stated in his First Amended Complaint. This is merely the tip of the iceberg on the myriad of consumer reports provided by the CRA s including Trans Union from information in their files. There are numerous consumer reports that are generated by the CRA s from information they have in their files regarding such things as rental history, criminal background, public records, employment etc. so the argument that all Trans Union had to do is provide information to Mr. Gavin that is specific to one particular consumer report (a credit report) is fatally flawed.

Trans Union cites Arista Records LLC v. Doe 3 604 F.3d 100 (2d Cir. 2010) and Mathews v. Bowie County, 2013 U.S. Dist. LEXIS 130978 (E.D. Tex. Sept. 13, 2013) in support of its argument on Plaintiffs information and belief statement. As is quite often the case the argument here by the Defendant actually supports Plaintiff in that 1) the facts here are peculiarly within the possession and control of the defendant (and would have to be revealed in Discovery and 2) the information is based on factual information known by Plaintiff from other cases involving Trans Union specifically that provides an inference of

facial plausibility to his claims. After viewing Trans Union's videos how could Plaintiff NOT believe that there had to be at least some information in their files that relates to him that has been or might be furnished to a third party in a consumer report of some type? Trans Union's smokescreen defenses relating to Plaintiffs **information and belief** allegations are baseless, have no merit and should be rejected.

## CONCLUSION

Trans Union knows full well as a major long term player in the consumer reporting agency arena what the requirements of the FCRA are. They also know whether they have any information in their files that relates to Mr. Gavin that was not disclosed to him after his request. The fact Trans Union did not categorically state it has no additional information relating to Mr. Gavin as a consumer in its files in its Motion to Dismiss would leave a reasonable person, including this court, to reasonably assume there might be more information that was not disclosed as required under 15 U.S.C. § 1681g. Trans Union's Motion to Dismiss should be denied and this case should go forward to Discovery to answer that question factually.

**WHEREFORE,** because the Defendant has failed to bring forth any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court deny Defendant s Motion to dismiss and allow Plaintiffs claim to move forward to trial on the merits. In the event the Court finds that Plaintiff has failed to state a claim as alleged by Trans Union, Plaintiff requests leave of this court to file an Amended Complaint to cure any deficiencies identified by the Court.

Respectfully Submitted

*/s/ Earl Gavin*

Earl Gavin
300 Marion Ave
Gaffney SC 29341
Egav1986@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above document was sent to the parties listed below by first class mail USPS.

**Counsel for Defendant Experian Information Solutions, Inc.**
Lyndey Zwing
Adams & Reese LLP
1501 Main St 5th Floor
Columbia SC 29201
*and….*
Autumn Hamit Patterson
Jones Day
2727 N. Haywood St
Dallas TX 75201-1515

**Counsel for Defendant Trans Union, LLC**
Wilbur E. Johnson
Young Clement Rivers, LLP
PO Box 993
25 Calhoun Street, Suite 400
Charleston SC 29401

**Counsel for Defendant Equifax, Inc.**
Rita Bolt Barker
WYCHE PA
44 East Camperdown Way,
PO Box 728
Greenville SC 29601-3512