IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

EARL GAVIN )
    Plaintiff. )
 )
 ) Case No 7:18-cv-00523-DCC-JDA
vs )
 )
EXPERIAN INFORMATION )
SOLUTIONS, INC.; TRANS UNION )
LLC; EQUIFAX INFORMATION
SERVICES LLC, EQUIFAX, INC; )
    Defendants )
 )
 )

## FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Earl Gavin, a natural person, who resides in Cherokee County, South Carolina.

4. Defendant Experian Information Solutions, Inc. (Experian) along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency (CRA) regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 et seq. and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries and partners sell consumer information and data derived from

consumer information in its consumer file(s) in a number of products and services to customers such as offering their Collection Triggers service which operates on consumer data updated daily on an immense database of over 220 million consumers known as "File One as just one example and generates hundreds of millions of dollars in revenue annually. Experian gathers massive amounts of consumer information on a daily basis as stated on their own web page2 "Experian s U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes. Experian markets a product for businesses to target people for financial products using its financial data solutions stating "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct). on that same web page.

6. Defendant Equifax, Inc. (Equifax) along with its subsidiaries **operates** as a Consumer Reporting Agency (CRA) regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 et seq. with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax, Inc. is the parent (holding company) of Equifax Information Services EEC (EIS). In prior litigation it has taken the position it is not itself a "consumer reporting

agency governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. )

8. But of course, Equifax, Inc. *is* a consumer reporting agency. For purposes of the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators and the public Generally as the actual operating entity. Even the United States Congress recognizes Equifax, Inc. as a consumer reporting agency as evidenced by a recent letter to it from the Committee on Oversight and Government Reform. **See Exhibit 3** The branding, labels and disclosures on the Defendants consumer website is dominated by Equifax, Inc. "titling" Defendants have held Equifax, Inc. out as the operating and responsible entity but argue in litigation that EIS is the consumer reporting agency not Equifax, Inc. How a company factually operates is what matters under the FCRA not how it says it operates.

9. Equifax, Inc. and its subsidiaries such as Equifax Information Services EEC (EIS) and Equifax Consumer Services, EEC (ECS) *operate* as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between those and numerous other "Equifax" entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

10. Equifax, Inc. and its subsidiaries including EIS operate using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

11. Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

12. The FCRA, through a rule mandated at § 1681x expressly prohibits a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency by means of corporate organization or restructuring and Equifax is doing precisely that in reality.

13. Equifax, Inc. and its subsidiaries - whether or not they observe state law corporate formalities - have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information.

Equifax, Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer. It does so with a number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

14. To remain separate and distinct for purposes of liability in this action. Defendants Equifax, Inc. and Equifax Information Services, LLC must operate as separate and legally as well as operationally distinct entities. Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc. For purposes of how consumer data was handled, warehoused, used and sold the corporate lines were disregarded in practice. EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business. Equifax, Inc., EIS, ECS and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

15. Defendant Trans Union, LLC (Trans Union) along with its subsidiaries and affiliates **operates** as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 et seq. with corporate offices at 555 W. Adams Street Chicago, IL 60661. Trans Union operates as a single FCRA governed consumer reporting agency. Trans Union has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities. However, it freely transfers data

between units and operates without any impediments of corporate structure.4 In almost every material regard, the Trans Union units operate as if they are one and the same, a single consumer reporting agency.

## VENUE

16. The occurrences which give rise to this action occurred in Cherokee County, South Carolina and Plaintiff resides in Cherokee County of South Carolina.

17. Venue is proper in the state of South Carolina.

## GENERAL ALLEGATIONS

18. Plaintiff wanted to obtain his **full consumer file disclosure** to obtain all information recorded and maintained in Defendants files and/or databases about him as 15 U.S.C. § 1681g(a)(l) states he is entitled to. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(l) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(l) Plaintiff looked at the annualcreditreport.com website which was set up and is operated by the Defendants but could find no place on that website where he could request his **full** consumer file disclosure. Instead he found only where he could request a credit report which is NOT what he wanted or what § 1681g(a)(l) states he is entitled to upon request as a consumer. Plaintiff then decided to write to each of the Defendants directly and **made a very deliberate and specific request to obtain his full consumer file Disclosure** which he is entitled to under 15 U.S.C. § 1681g(a)(l), **NOT** just a conventional credit report.

19. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Experian on November 10, 2017. See Exhibit 1

20. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a document which stated it was a "Credit Report with a mere 5 pages of consumer information which was not responsive to his request for all information in his file.

21. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Equifax on November 10, 2017. See Exhibit 1

22. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a letter from Equifax Information Services LLC which stated in part that he was not eligible for a free copy of his credit file. The letter was not responsive to his request for his **full consumer file.**

23. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Trans Union on November 10, 2017. See Exhibit 1

24. In response to his very specific request for his full consumer file disclosure Plaintiff received a document which stated it was a Trans Union Personal Credit Report with a mere 5 pages of consumer information which was not responsive to his request for ALL information in his file as requested.

25. Plaintiff, in making the exact same request of each of the Defendants, specified in

great detail exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** at least once every 12 months at no charge when a request is made by a consumer. See Exhibit 1

26. Plaintiffs request for a **full consumer file disclosure** from each Defendant was his first request for a **full consumer file disclosure** within 12 months and identification in the Form of a legible copy of his social security card and current South Carolina driver s License was attached to the request for identification and location purposes.

27. After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second and final written request for a **full consumer file disclosure** for ALL information in his file(s) pursuant to the FCRA of each Defendant. [Exhibit 2] A copy of the initial letter was sent with the second request for clarification along with identification in the form of a legible copy of Plaintiff s social security card and current South Carolina driver s license for identification.

28. <u>At no time did Plaintiff make any request for a credit report/disclosure or credit file</u> from the Defendants but instead was very specific and deliberate in requesting a **full consumer file disclosure** of all information in their file(s) pursuant to 15 U.S.C. § 1681g(a)(l) as outlined in the initial request. [Exhibit 1 ]

29. In response to Plaintiffs second request for a **full consumer file disclosure** to Experian he received **another** document which stated it was a <u>credit report</u> with a mere 6 pages of consumer information which was not responsive to his request for ALL information as required by 15 U.S.C. § 1681g(a)(l).

30. In response to Plaintiffs second request for a **full consumer file disclosure** to Equifax he received a document from Equifax titled <u>credit file</u> with only 6 pages of consumer information which was not responsive to his request for ALL information in his file as required by 15 U.S.C. § 1681g(a)(l). The front page including Plaintiff s address showed the correspondence was from "Equifax not some other entity such as Equifax Information Services, LLC. On the reverse side of that page it said only "Equifax" at the top of the page and further down it states that Plaintiff could initiate an online investigation using the link www.investigate.equifax.com. It also stated the enclosed Research Request Form could be sent to Equifax Information Services LLC. All indications were that the communication was **from** Equifax, Inc. rather than from Equifax Information Services LLC where they say you should send a dispute. The Plaintiff as a least sophisticated consumer had reasonable belief that the communication was from Equifax, Inc. given the entity it was mailed to and the titling of the response to the request. Nowhere was there any indication that the response originated from any entity other than that which the request was mailed to or that the response was from other than Equifax, Inc.

31. Equifax has its various entities use just the name "Equifax" in their communications with consumers, regulators and others and is but one example of how Equifax, Inc. and its subsidiaries in actuality function as one consumer reporting agency rather than *operating* as separate and distinct entities identified as such on an ongoing basis as they hold themselves out to be to the public, shareholders and regulators in violation of 15 U.S.C. §

1681x. But when suit is brought against Equifax, Inc. it claims it is not a consumer reporting agency and is not liable which is not the case. In reality, its various subsidiaries use the name Equifax" and the same logo in dealing with the public, regulators and others and creating a public appearance especially to the least sophisticated consumer they are one large enterprise rather than separate legal entities required to operate and be identified as such at all times. The various operations exchange information with no corporate impediments as well. It is a grand deception. HOW they operate rather than how they SAY they operate is what matters when it comes to 15 U.S.C. § 1681x and Equifax, Inc. attempts to circumvent the law to escape liability by saying EIS is the CRA, not them, when that is factually incorrect.

32. In response to Plaintiffs second request for a **full consumer file disclosure** to Trans Union he received another document which stated it was a Trans Union Personal Credit Report which contained just 5 pages of consumer information and was not responsive to his request for ALL information in his file as required by 15 U.S.C. § 1681g(a)(l).

33. 15 U.S.C. § 1681g(a)(l) requires that ALL information in the possession of a CRA at the time of a consumer s proper request be disclosed in response to that request. Nowhere in §1681g does the statute limit that information to the scope of credit or credit related data which may be included in a conventional credit report. The **plain language of the statute** clearly states ALL information regardless of its nature must be provided other Than clearly ancillary information excluded by §1681g(l)(B) which Plaintiff clearly did NOT request. [Exhibits 1,2] The Defendants attempt to obfuscate the facts by using other terminology than the plain language of the statute to describe what is required to be

provided to Mr. Gavin upon his requests which were very simple, straightforward, clear and precise.

34. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

35. In each case with each Defendant there was only communication in the form of letters requesting Plaintiffs **full consumer file disclosure** and responses by each Defendant with no other party involved other than the United States Postal Service (USPS) which transported documents between the parties.

36. Plaintiff was well aware of the recent hack of the Equifax database and had reason to believe that more information than he had ever received in a conventional credit report in the past had been stolen just from the massive publicity surrounding the hack and his study of the consumer protection statutes including the FCRA. He had been studying the FCRA prior to the hack and already realized there was substantial information that companies like Equifax, Experian and Trans Union had in their file(s) about consumers than had been included in a conventional credit report he had received previously from any of the Defendants.

37. Plaintiff had **requested and received** a full consumer file disclosure from LexisNexis in 2018 that contained 106 pages of consumer information including individual consumer reports with substantial information about him contained in those individual reports being sourced from Equifax and Experian dating back as far as 1990's.

LexisNexis referred to the documents produced as Plaintiffs full file disclosure. Much of the information in those reports was sourced from Equifax and was information never previously provided in a conventional credit report Plaintiff had received from Equifax and some of the information was erroneous. There was a monumental disparity between the number of pages of consumer information provided by LexisNexis at 106 pages versus just 5 to 7 pages in the documents provided by each of the Defendants in response to the same request made to LexisNexis.

38. With substantial information shown in the LexisNexis full file disclosure as being sourced ***substantially from Equifax*** and some from Experian it was reasonable for Plaintiff to deduce that information required to have been disclosed by Defendants was not. How could the Defendants be "the big three" in the consumer reporting business with so little information about Mr. Gavin in their files in comparison to what LexisNexis had? That is not logical. How could it be that Mr. Gavin was somehow exempted from The information gathering processes used by the "big three" Defendants which seemingly had so little information in his files in comparison to LexisNexis? That also is not logical. How could it be that LexisNexis provided substantial information about the Plaintiff that was sourced from Equifax but Equifax didn't provide it upon Plaintiffs request to them for a **full consumer file disclosure**? That is not logical to even the most unsophisticated consumer with little knowledge of the operations of the consumer reporting industry.

39. It was obvious to Plaintiff that information was being withheld by Defendants rather than being disclosed as required by the FCRA. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(l) of this title, clearly and accurately disclose to

the consumer **all information in the consumer s file at the time of the request**. 15 U.S.C. § 1681g(a)(l) (emphasis added) Defendants have deliberately, intentionally and in Violation of the law refused to provide all information in their file(s)/databases that relates directly to Mr. Gavin.

40. LexisNexis is a consumer reporting agency as well and is governed by the FCRA just as the Defendants are. Plaintiff had no direct knowledge of specific information regarding himself that was in Defendants file(s) but had very good reason to believe there was substantial consumer information in their files based on the LexisNexis reports and publicity surrounding the Equifax hack. That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** from Defendants pursuant to 15 U.S.C. § 1681g(a)(l) as he had from LexisNexis rather than asking for a conventional credit report as he had in the past either through an ualcreditreport.com or directly from the Defendants.

41. Plaintiff did NOT request a credit report, credit disclosure, or anything else using the words credit or "report in any manner from any Defendant at any time related to this lawsuit but instead made a very deliberate and specific request for his **full consumer file disclosure** and nothing else. [Exhibit 1,2] There was no confusion whatsoever on Plaintiffs part as to exactly what he was asking for and what was required under 15 U.S.C. § 1681g(a)(l).

42. Upon information and belief there is substantial information relating to the Plaintiff that is contained in all Defendants' files that has not been disclosed to him including, but

not limited to, information that was previously shown in his credit reports that is now archived and additional information that is provided to prospective creditors, insurers, employers and other third parties who request information on Plaintiff that he has never seen or has been made aware of even after lawful requests for it have been made.

43. Upon information and belief the information that is not disclosed to Plaintiff may contain negative codes or erroneous account information, among other things, that is provided to prospective creditors, insurers or employers which directly affect how that prospective creditor, insurer or employer would view Plaintiff in terms of granting credit, rating insurance policies or providing employment or even providing housing.

44. This undisclosed information has never been provided to Plaintiff even when it was properly requested so he could examine it for accuracy and dispute it if necessary. It could be blatantly false or at the least misleading and without disclosure by the Defendants Plaintiff would not have the opportunity to dispute the accuracy or veracity of the information in Defendants files which he is legally entitled to do under the FCRA. Disclosure of false or misleading information to other parties such as prospective creditors, insurers or employers that Plaintiff knows nothing about could paint him in a false light where he could be denied credit, housing, employment or pay higher interest rates on credit if it was granted and higher premiums for insurance harming him substantially. The bottom line is he is entitled to that information after a proper request is made and it was not provided by Defendants.

45. Upon information and belief Defendants have far more information relating to

Plaintiff in their file(s) and/or database(s) including archived information beyond that which Plaintiff has ever had access to or had the opportunity to review for accuracy and is provided to others when they make a request for consumer information on him. This information has been properly requested by Plaintiff multiple times and is required to be disclosed under 15 U.S.C. § 1681g(a)(l) when a proper request is made by a consumer such as Mr. Gavin. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(l) of this title, clearly and accurately disclose to the consumer all information in the consumer s file at the time of the request. 15 U.S.C. § 1681g(a)(l)

46. The Defendants have *repeatedly refused* to provide Plaintiff with his **full consumer file disclosure** after multiple requests. Plaintiffs requests were very specific in nature so as not to be misconstrued as a request for a credit report, credit disclosure or some other thing by Defendants. Defendants attempt to obfuscate the requests through the use of terminology such as disclosure, credit and report in various forms and in doing so did not respond properly as required by law to Plaintiffs very simple, deliberate and legal requests.

47. Plaintiff never made any request of Defendants that used the words "credit or "report" in any manner or context but made a straightforward, deliberate and very clear request **ONLY** for a **full consumer file disclosure** [Exhibits 1,2] to which he is entitled under 15 U.S.C. § 1681g(a)(l) and all Defendants failed to provide his **full consumer file Disclosure** which is ALL information in their file(s) at the time of the request as required by the FCRA.

48. Plaintiff clearly is not making any claim regarding information that **HAS** been provided to a third party that he is aware of nor is he disputing the accuracy of any information in his file or that may have been provided to a third party. The sole issue in this lawsuit revolves around the fact that he has not been provided ALL information in his **full consumer file** that may have been at some time in the past provided to a known or unknown third party or might be provided at some time in the future to a third party that he is entitled to have access to by law to review for accuracy.

49. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. [Exhibits 1,2] The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information directly related to him as a consumer that affects his credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

50. Because Plaintiff has not had access to that undisclosed information he has therefore had no opportunity to review it and dispute the accuracy of it if it is false yet it may be provided to potential creditors, housing providers, insurers and employers without his knowledge and is purposely and illegally concealed from him. Plaintiff has the right to disclosure of that information BY LAW when it is properly requested which was clearly the case here and all Defendants failed to provide the proper **full consumer file disclosures** after a very unambiguous request was made for it multiple times.

51. Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information. There is no prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

52. One can only surmise that there must be some nefarious reason why that information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer. A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don t want the consumer to see for some unknown reason. This is obviously not in concert with the mandate of foil disclosure clearly articulated in the FCRA in unambiguous plain language.

53. Plaintiff made multiple deliberate and specific written requests of each of the Defendants for a **full consumer file disclosure** of ALL information in his file to which he is entitled as clearly stated in 15 U.S.C. § 1681g(a)(l) and all Defendants have failed to provide his **full consumer file disclosure** to Plaintiff and are therefore in violation of the FCRA.

54. The claims made in this lawsuit are in no manner related to the data breach that occurred with Equifax. The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a full consumer file disclosure of ALL information in

Their files to Plaintiff upon his multiple requests as required by 15 U.S.C. § 1681g(a)(l).

There is no relation of any claims made herein to any issues with the Equifax data breach.

55. The alleged violations of all Defendants occurred within the past 2 years and are within the Statute of Limitations under the FCRA.

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT. 15 U.S.C. $1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

56. Paragraphs 1 through 55 are re-alleged as though folly set forth herein.

57. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

58. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

59. Experian repeatedly failed to comply with Plaintiffs multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(I).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1000.00, any attorney s fees, and all costs pursuant to 15 U.S.C. § 1681n.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

60. Paragraphs 1 through 55 are re-alleged as though fully set forth herein.

61. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

62. Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

63. Trans Union repeatedly failed to comply with Plaintiffs multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(l).

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES LLC

64. Paragraphs 1 through 55 are re-alleged as though fully set forth herein.

65. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

66. Equifax and its alter ego Equifax Information Services LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

67. Equifax and Equifax Information Services LLC repeatedly failed to comply with Plaintiff s multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(l).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, EEC for statutory damages of $1000.00, any attorney fees, and all costs pursuant to 15 U.S.C. § 168In.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully Submitted

*/s/ Earl Gavin*

Earl Gavin

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above document was sent to the parties listed below by first class mail USPS.

**Counsel for Defendant Experian Information Solutions, Inc.**
Lyndey Zwing
Adams & Reese LLP
1501 Main St 5th Floor
Columbia SC 29201

**Counsel for Defendant Trans Union, LLC**
Wilbur E. Johnson
Young Clement Rivers, LLP
PO Box 993
25 Calhoun Street, Suite 400
Charleston SC 29401

**Counsel for Defendant Equifax, Inc.**
Rita Bolt Barker
WYCHE
44 East Camperdown Way,
Greenville SC 29601-3512