RECEIVED

JUN - 4 2018

GREENVILLE, S.C.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| **EARL GAVIN**<br>Plaintiff. | )<br>)<br>) |
|  | )     **Case No 7:18-cv-00523-DCC-JDA** |
| **vs** | )<br>) |
| **EXPERIAN INFORMATION**<br>**SOLUTIONS, INC.; TRANS UNION**<br>**LLC; EQUIFAX, INC.**<br>Defendants | )<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF S MEMORANDUM IN OPPOSITION TO DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff, Earl Gavin asks the Court to deny Defendants Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

### INTRODUCTION

Plaintiff filed his Original Complaint alleging violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681g(a)(l) against Experian Information Solutions, Inc. (Experian),Trans Union EEC (Trans Union) and Equifax, Inc. (Equifax). Experian and Equifax answered the Original Complaint while Trans Union filed a Motion to Dismiss. Plaintiff then filed a Motion for Leave to file his First Amended Complaint alleging violations of the same statute against the same Defendants and added Equifax

Information Services EEC (EIS) as an additional Defendant. That motion was granted and the First Amended Complaint was docketed on May 25, 2018.

Equifax and EIS (Equifax Defendants) state that this is a case under the Fair Credit Reporting Act ( FCRA ), 15 U.S.C. § 1681-1681x but fail to state the specific claims made are under § 1681g(a)(l) and that Plaintiff alleges Equifax is in violation of § 1681x by virtue of how it operates making it a consumer reporting agency and liable to Plaintiff for damages. The Equifax Defendants argue Plaintiff has merely repeated statutory language and offers merely speculative and conclusory allegations that he received a credit report when he requested a full consumer file disclosure. The allegations by Plaintiff are factually correct and detailed and not mere speculation by any stretch of the imagination as shown in the record. Plaintiff included copies as exhibits of the two requests he made to Equifax specifically requesting a **"full consumer file disclosure"** to which he is entitled BY LAW and instead of a proper response he received only a credit report which is but one slice of the pie of consumer information in The Equifax Defendants' files that relates to him as a consumer. Plaintiff already knew that there was substantial information that Equifax had in its file(s) related to him it had provided to LexisNexis that was included in the **full file disclosure** he had received from it as stated in his Amended Complaint. Equifax does not have the prerogative to Provide whatever it wants to provide when a request is made for a full consumer file disclosure. Instead of complying with the specific request made it chose to only provide one very small slice of the pie of consumer information to which Mr. Gavin was entitled which does not equate to compliance with its required MANDATE under 15 U.S.C. § 1681g(a)(l) to provide a

**FULL** file disclosure to a consumer when it is properly requested. Plaintiff clearly stated the exact language of the statute that allows him to make such a request in his Amended Complaint that MANDATES that Defendants were required to provide a **full consumer file** disclosure to him upon his request. Mr. Gavin s claims are very specifically articulated with exhibits to support his claims in his notice pleading and the Equifax Defendants without question received fair notice of the claims being made. The Equifax Defendants apparently argue that Plaintiff must prove his case at the notice pleading stage rather than at summary judgment or trial which is not at all required by Fed. R. Civ. P. 8(a)(2) which states in part that each claim in a complaint include a short and plain statement... showing that the pleader is entitled to relief. Plaintiff went far beyond the minimal requirements of rule 8(a)(2) in his First Amended Complaint. The claims must include enough factual allegations to raise a right to relief above the speculative level. BellAtl Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiffs First Amended Complaint should not be dismissed because it states a plausible cause of action under Twombly and Fed. R. Civ. P. 8(a)(2).

## STANDARD OF REVIEW

When considering Defendant s motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will entitle Plaintiff to relief should the court grant Defendant's motion. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief. Beanal v. Freeport McMoran, Inc., 197 F.3d 161, 164 (5th Cir.1999). If the factual allegations in Plaintiff s complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant s motion.

## **ARGUMENT AND AUTHORITIES**

### **I . Equifax Inc. Is Not a Consumer Reporting Agency.**

The standard here is that Plaintiffs' detailed factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiff has stated a claim under the FCRA for the relief he has requested. The disputes raised by Defendants are not legal, but factual. The largest divide between the Plaintiffs position and the Equifax Defendants' arguments is the Parties' understanding of Rules 8(a)(2) and 12(b)(6). While Defendants apparently suggest Plaintiff must outline in full detail all facts that might be offered on summary judgment or at trial, a complaint actually satisfies Rule 8 if it contains a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In this case Plaintiff has alleged sufficient detail by which the Equifax Defendants can answer and by which the Court can determine the plausibility of his claims.

The FCRA in § 168lx and 12 CFR 1022.140 clearly articulate that a consumer reporting agency may not structure itself in a certain manner to avoid liability as a consumer reporting agency. Equifax, Inc. operates its business touting itself as being one of the big three consumer reporting agencies along with Experian and Trans Union.

Equifax, Inc. does not state that one of its subsidiaries or divisions is the consumer

reporting agency but they are not. Congress obviously recognizes Equifax, Inc. as a

consumer reporting agency as evidenced by the letter from Congress to them attached as

an exhibit to Plaintiffs First Amended Complaint.  In fact in a letter from

King & Spalding on behalf of Equifax, Inc., to the State Attorneys General of all states

regarding the data breach in 2017 the letter refers to Equifax, Inc. rather than a breach of

Equifax Information Services EEC s database. *See Exhibit 3* attached There is never any

mention that it was not Equifax, Inc.'s fault or problem or another company's database

that was hacked. It is not only a matter of how the company is organized but more

importantly how the information in the multiple consumer databases under Equifax's

control is used by various entities.

In no manner does Equifax, Inc. identify on its webpages where it promotes to

consumers, regulators or the public at large that Equifax Information Services EEC is the

consumer reporting agency and that is where a person would need to go to obtain

information from them such as a credit report or a full file disclosure. Each webpage uses

only the name Equifax and the Equifax logo at the top of the page while at the bottom of

each page in the copyright notice it clearly states "Copyright Equifax, Inc. 2018." [1] When

referring to any of its products on its webpages such as credit reports it refers to your

Equifax credit report rather than your Equifax Information Services EEC credit report.

There is no reference whatsoever to Equifax Information Services EEC as being the

provider of an "Equifax credit report. Equifax, Inc. is very consistent in its use of only the

---

[1] https://www.equifax.com/personal

word "Equifax in all of its communications both on the web and in correspondence with consumers. This gives rise to the belief that Equifax, Inc. is in fact the company providing the information that any customer much less the least sophisticated consumer would seek or receive through various consumer reports, not necessarily just credit reports. Which companies under the "Equifax umbrella are using what information, how is it being used and accessed, is the major question here to determine whether Equifax, Inc. is in fact a CRA as alleged by Plaintiff. In other words, Equifax Information Services EEC operates in the shadows almost all of the time until litigation arises and viola... they are then identified as the CRA so Equifax, Inc. is off the hook for liability. But how they actually **operate** in the shadows is what Plaintiff seeks to bring to light to show that Equifax, Inc. does in fact **operate** as a CRA in a factual sense because of its concerted efforts to structure itself through various divisions and/or subsidiaries such as Equifax Information Services EEC and to allow the various subsidiaries to access the same information to avoid liability which is strictly prohibited under 15 U.S.C. § 168lx and 12 CFR 1022.140. The bottom line is that their actions speak louder than their words of denial here.

Equifax provides case law in support of its motion to dismiss that Equifax, Inc. is not a CRA such as *Greear v. Equifax Inc.*, *Channing v. Equifax, Inc.* and Slice v. *Choicedata Consumer Servs., Inc.*, *Persson . Equifax, Inc.* and *Weiler v. Equifax, Inc.* but there is a major problem with what they present. In those cases the dismissal was at summary judgment with Judge Lauck stating However, every decision cited by Equifax, Inc. was rendered at the summary judgment stage... Further, in each of the cases cited above, the plaintiff either proceeded pro se or failed to oppose the motion. Such rulings cannot

provide persuasive support for the Defendants' position at the Motion to Dismiss stage. in the court s Memorandum Opinion denying Equifax, Inc.'s motion to dismiss. *Jones v. Equifax, Inc.* U. S. District Court for the Eastern District of Virginia 3:14-cv-00678 (Aug. 27, 2015) Doc. 54 fnl1 This case should proceed to let the facts be discovered and presented rather than hidden which is the rather obvious desire of the Equifax Defendants in this case.

Equifax, Inc. also argues Plaintiff is asserting an argument that the corporate veil should be pierced. That is a wholly specious argument. While Plaintiff does state in his complaint that Equifax, Inc. is identified as a holding company that is not the issue here as to what would determine whether Equifax, Inc. is a CRA. That fact is established by determining how the FCRA protected data in Equifax Inc.'s databases is used, accessed, and by whom. The FCRA is very clear how FCRA protected data may and may not be used and by whom. It is not about piercing the corporate veil and that is an argument with no merit.

Plaintiffs First Amended Complaint plausibly alleges that Equifax, Inc. and its subsidiary EIS **operate** as a single unified consumer reporting agency. Doc 52 *line 8,9,10,11,13,31* Defendants operate as a single FCRA governed "consumer reporting agency." Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income-records in a second entity. Defendants together maintain a collective set of databases that - for Defendants day-to-day use are treated as an integrated pool of information on

consumers. One of those databases is directly operated by Equifax, Inc. - the WorkNumber as one example while others are operated by EIS. Very clearly, "The WorkNumber" data is used for FCRA purposes and is of the nature of FCRA protected data as is consumer credit related data contained in the databases operated by EIS.

Each Defendant is a CRA. Equifax freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Equifax units operate as if they are one and the same, a single consumer reporting agency." Equifax is a consumer reporting agency' as defined in 15 U.S.C. §1681(1). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties. Each of the Equifax entities is integrated as a single national credit reporting agency, with all databases marketed and made available to each of Equifax's customers regardless of structure or category of content. Defendants operate collectively and jointly as a national "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax, Inc. which operates as "Talx Corporation and "The WorkNumber , even states on its website, Under FCRA, we are a Consumer Reporting Agency and subject to its requirements.2

To support their motion, Defendants ignore these allegations and instead improperly attempt to state that the credit file that Plaintiff received was sent from EIS when that is

---

2 https://www.theworknumber.com/Employees/FCRA/index.asp

not the case at all. Mr. Gavin sent his requests specifically to Equifax not EIS.  If that was

not the proper party he was not advised of that in any manner and his letter was not

returned. Nor did he receive any communication that he had made his request of the

wrong party and should contact EIS instead as Equifax was not a CRA and could not

provide the requested information. Plaintiff instead received after his second request a

credit file or what Equifax identified as "commonly known as a credit report" in

response that <u>identified the sender and the provider of that information only as Equifax</u>.

The only reference to EIS was if he should want to make a dispute of information

contained in the report he had received.

Equifax itself states in its 2016 10K filing "Equifax Inc. is organized and reports its

business results in four operating segments. An "operating segment" is by definition a

component and part of a single corporate entity:

**Identification of operating segments**
IFRS 8 defines an operating segment as a component of an entity:
• that engages in revenue earning business activities
• whose operating results are regularly reviewed by the chief operating decision maker.
The term 'chief operating decision maker' is not as such defined in IFRSS as it refers to a
function rather than a title. In some entities the function could be fulfilled by a group of
directors rather than an individual and
• for which discrete financial information is available.

http://www.accaglobal.com/gb/en/member/discover/cpd-articles/corporate-
reporting/ifrs8-operating.html ₃ S.E.C. financial statement standards are similar:

**Under the new accounting standard, an operating segment is a component of a
business, for which separate financial information is available, that management
regularly evaluates in deciding how to allocate resources and assess performance.
Specifically, SPAS No. 131 states that an operating segment is a component of a
business:**

---

**3.** ACCA (the Association of Charted Certified Accountants) is the global body for professional
accountants.

**\* that engages in activities from which it may earn revenues and incur expenses (including revenues and expenses relating to transactions with other components of the same business);**
**\* whose operating results are regularly reviewed by the enterprise s "chief operating decision maker" to make decisions about resources to be allocated to the segment and assess its performance; and**
**\* for which discrete financial information is available.**

S.E.C. Segment Reporting Final Rules, https://www.sec.gov/mles/fmal/33-7620.txt (last visited March 15, 2018). It is not common ownership that matters, but common use of a FCRA-governed database that determines whether Equifax, Inc. and EIS **operate** as a consumer reporting agency. That is a question of fact to be determined through fact evidence rather than being a matter of law as Equifax, Inc. argues.

Equifax, Inc. and EIS may try and deny these factual allegations somehow, but the allegations at this point more than support a plausible claim that the Defendants are a single operating CRA. Flow Defendants then segment their data for marketing and operations purposes is immaterial. An alleged EIS credit report may contain data that Equifax categorizes as credit reporting data as well and information it categorizes as "WorkNumber" data", and vice versa. Flow it brands its reports and what business segment it uses to deliver or sell them is immaterial. Plaintiffs Complaint plausibly alleges that Defendants operate as a single CRA.

Equifax's argument is largely based upon its narrow and conventional reliance upon Corporate formalities - corporation X is not responsible for the debts of corporation Y. That veil ¬ piercing mindset is not relevant for the question of whether the Defendants operate together as a CRA. This case is brought under a federal statute - the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. Determination as to whether to ignore the

corporate veil in determining substantive liability of a party under a federal statute is

governed by federal, rather than state law as the doctrine of piercing the corporate veil is

not a mere procedural rule or mere judgment enforcement mechanism, but substantively

determines who is liable under the federal statute. *Thomas v. Peacock*, 39 F.3d 493, 500-

502 (4th Cir. 1994) (Applying this principal to an ERISA action). The standard adopted

by the Fourth Circuit in *Thomas* was what it described as the "liberal veil-piercing"

standard enunciated by the First Circuit:

> **The general rule adopted in the federal cases is that "a corporate entity**
> **may be disregarded in the interests of public convenience, fairness and**
> **equity," [citing Capital Telephone Co. v. FCC, 498 F.2d 734, 738**
> **(D.C.Cir.1974) ]. In applying this rule, federal courts will look closely at**
> **the purpose of the federal statute to determine whether the statute places**
> **importance on the corporate form [citations omitted], an inquiry that**
> **usually gives less respect to the corporate form than does the strict**
> **common law alter ego doctrine.... (Emphasis added).**

*Thomas*, 39 F.3d 503-304 citing *Alman v. Danin*, 801 F.2d 1, 3-4 (1st Cir.1986) and

Town of *Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981). Thus, for example,

while the state common law threshold could arguably require more, the federal threshold

For finding one entity an alter ego of another includes circumstances in which "adherence

To the corporate fiction [would ...] lead to an evasion of legal obligations." *Thomas*, 39

F.3d 504 (citations omitted).

Plaintiffs First Amended Complaint in fact provides greater detail and specificity

than has been held necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing.

For example, In *The Flexible Benefits Council v. Feltman*, l:08cv371, 2008 WL 2465457,

*7 (E.D. Va. 2008), Judge Cacheris rejected a corporate veil Rule 12(b)(6) argument

against a Complaint that principally alleged, Upon information and belief, all of the above

actions were performed in concert with Defendants Feltman and ECFC, Ltd., as well as with other associates currently unknown to plaintiff. Feltman Complaint, *line 50*. Similar conclusions were reached in cases with varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs allegations of the individual's control and dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp.,* 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against individual who controlled corporate defendant). Indeed, in Maganallez, the court noted that an allegation that one of the major shareholders has essentially full operational control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory. Id. at 608 (citing In re Napster, Inc. Copyright Litig., 354 F.Supp.2d 1113, 1122 (N.D. Cal. 2005)). In *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.,* 850 F. Supp. 905 (D. Or. 1994), the plaintiffs alleged merely that Allstate and another defendant shared the same corporate offices, used the same employees, performed the same type of work, and interchanged vehicles, real property and assets. This was sufficient to state a claim for alter ego liability, as Plaintiffs' allegations are here. *See also CitiMortgage, Inc. v. NL*, Inc., 2010 WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development*, F.Supp.2d , 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.,* F.Supp.2d , 2010 WL 991621, *7-8 (S.D.N.Y. March 19, 2010).

Presently, the core dispute at this point is whether BOTH Defendants operate as a

consumer reporting agency and are therefore subject to the FCRA. The First Amended

Complaint alleges that they do. Defendants response is that the Complaint should be

dismissed because they claim to have manufactured a corporate structure that separates

Equifax's data between multiple controlled entities. This attempted evasion of legal

obligations otherwise imposed by the FCRA through "creative corporate structuring is

addressed head-on in applicable FCRA regulations. The Federal Trade Commission, at

the time responsible for enforcement of the FCRA, promulgated regulations almost

exactly on point to the Equifax Defendants. See 16 C.F.R. Part 611. Part 611 is titled

"Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting

Agency and in relevant part states:

(a) A consumer reporting agency shall not circumvent or evade treatment as a
consumer reporting agency that compiles and maintains files on consumers
on a nationwide basis' as defined under section 603 (p) of the Fair Credit
Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited
to:
(1) Corporate organization, reorganization, structure, or restructuring,
including merger, acquisition, dissolution, divestiture, or asset sale of a
consumer reporting agency[.]

16 C.F.R. Part 611.2. While the Plaintiffs' allegations and Defendants' descriptions of the

structural insulation attempted by Equifax would appear on all fours with the blanket

prohibition in Part 611, the FTC examples of prohibited activity even more precisely fit

Equifax. These include "(1) *Circumvention through reorganization by data type*. In this

illustration of a corporate structuring example that would not be recognized as a bar to

FCRA governance, the FTC proposed the following:

**XYZ Inc. is a consumer reporting agency that compiles and maintains files on
consumers on a nationwide basis. It restructures its operations so that public
record information is assembled and maintained only by its corporate affiliate,**

**ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. [...]**

*Id*. Similarly, for another of the three illustrated prohibited examples, the FTC offered:

**(3) *Circumvention by a newly formed entity*. [...] . Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide [.]**

*Id*. In applying the federal standard adopted in Thomas, this Court cannot reasonably conclude that the FCRA s purpose places importance on the corporate form. To the contrary, the FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application are prohibited.

Equifax's and EIS' argument also fails for another reason. Even if the Court somehow concludes that the Defendants do not operate in a manner to be considered a single CRA, they are each obligated to provide the full file on each consumer. And the file consists not only of information stored in the database at that defendant s facility, but all information that could be included in a consumer report it may sell. The Third Circuit heard and rejected the same argument made by Trans Union under weaker circumstances - where the separate data that "could be accessed by Trans Union was maintained in a database operated by an unrelated third party. The Court of Appeals rejected that argument: Trans Union concedes that Cortez requested her credit report on multiple occasions; nevertheless, it failed to provide her with the HAWK and OFAC alert

information on her report. However, Trans Union again makes an argument
similar to that discussed above. It argues that the OFAC and HAWK information
is not part of the consumer's file under the FCRA and that, it was not required
to disclose the information to Cortez.

The FCRA defines file when used in connection with information on any
consumer, as "all of the information on that consumer recorded and retained by a
consumer reporting agency regardless of how the information is stored." 15
U.S.C. § 1681a(g). Trans Union attempts to avoid the obvious reach of that
language by relying on the fact that the SDN List information was not part of its
database; rather, as explained earlier, that information was separately maintained
by Accuity. According to Trans Union, the information should not be considered
part of the consumer's file for purposes of the FCRA. Not surprisingly, Trans
Union cites no cases to support this argument. The argument requires us to ignore
that the FCRA specifically provides that the duty of disclosure applies to
"information on [a] consumer ... regardless of how the information is stored. 15
U.S.C. § 1681a(g). We do not believe that Congress intended to allow credit
reporting companies to escape the disclosure requirement in § 1681a(g) by simply
contracting with a third party to store and maintain information that would
otherwise clearly be part of the consumer's file and is included in a credit report.
**Congress clearly intended the protections of the FCRA to apply to all
information furnished or that mi ht be furnished in a consumer report.**
Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir.2007).
Moreover, as the court in *Gillespie* noted, file denotes all information on the
consumer that is recorded and retained by a consumer reporting agency that might
be furnished, or has been furnished, in a consumer report on that consumer." *Id.*
(quoting 16 C.F.R. pt. 600, app. § 603).

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010) (emphasis added).
Thus, when Plaintiff requested his disclosure from Equifax, even **IF** it was provided by
EIS it was obligated to provide the full file - to include not only its own credit trade-line
items, but also the other data it regularly sells. Either way, at this stage Plaintiff has more
than alleged a plausible claim.

## II. Mr. Gavin's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief

## Pursuant to § 1681g.

Mr. Gavin made a very specific request for his full consumer file disclosure pursuant

to 15 U.S.C. § 1681g to be sure that there would be no misunderstanding as to exactly

what it was he was requesting anticipating that Equifax may respond by sending just his

conventional credit report in response to his request. [Doc. 1-1] When he received the

first response which incorrectly stated he was not entitled to a free copy of a disclosure he

made a second and final very detailed request to be sure that Equifax knew without any

doubt what he was requesting and entitled to under the FCRA and that he had not

requested or received a free copy of any disclosure in the 12 months prior to his request.

[Doc. 1-2] Equifax responded with nothing more than a credit file which they stated was

commonly called a credit report that was not responsive to his request for his full

consumer file disclosure. Mr. Gavin did NOT make a request for a credit file or credit

report. [See Doc. 1-1, 1-2] He made no request for any credit score, other risk scores or

predictors or any ancillary information outside of the information that was specific to him

as a consumer. He made no request for any information relating to any processes or

procedures of Equifax or how it manages any information about him in its systems.

The Equifax Defendants argue that Mr. Gavin recites in a "conclusory fashion" that he

did not receive a full file disclosure. Mr. Gavin simply made a statement of FACT about

not receiving a **full consumer file disclosure** not a conclusory statement as the Equifax

Defendants allege. Mr. Gavin clearly states his request was for a **full consumer file**

**disclosure** and he only received a credit file which is but one small slice of the pie to

which he was entitled under his request for a **full consumer file disclosure** of ALL

information in his Equifax file(s) at the time his request was received. Those are

statements of FACT not conclusory in any form or fashion. Mr. Gavin's complaint pleads

in detail precisely what he was asking for, what Equifax failed to do to comply with his

request and his complaint is supported by exhibits and should not be dismissed.

**A. "Consumer file" is defined as the information contained in a consumer's**

**disclosure/credit report**

In its arguments for dismissal the Equifax Defendants immediately begin by conflating the words disclosure and credit report (disclosure/credit report) arguing they are synonymous. **Nowhere** in the FCRA is the term disclosure/credit report used. In its arguments for dismissal the Equifax Defendants begin by pointing to the Federal Trade Commission ( FTC")5 interpretation of the term "file" and attempts to mislead the court. The 40 Years Commentary, p.71 clearly states Ancillary records" such as a CRA s audit trail of changes it makes in the consumer file, billing records, or the contents of a consumer relations folder, are not included in the term information in the consumer s file.'" *Id.* Plaintiff could not agree more! But the FTC does **NOT** state that all a CRA is required to provide in response to a request for a full consumer file disclosure is a "credit report. Plaintiff clearly stated in his First Amended Complaint that he did NOT request any of those things mentioned in the 40 Years Doc above in either of his requests *(see Doc. 52 line 41)* and that can also be seen when reviewing the requests made to Equifax. [Doc. 1-1, 1-2] A credit report is a disclosure of course... of credit information and but one small slice of the overall pie of information contained in a CRA s files related to a consumer. That does not mean it is necessarily a disclosure of all information recorded and retained in a CRA s file regarding a consumer at the time the report is generated

--------

4 The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ( CFPB ) after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published 40 Years of Experience with the Fair Credit Reporting Act - An FTC Staff Report with Summary of Interpretations ( 40 Years Commentary ). The report stated that the CRA must disclose all items in the consumer s file, but that ancillary records , for example, a CRA s audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term information in the consumer's file.' See 40 Years Commentary, p. 71. The pervasiveness and significance of the FTC interpretation remains true today. The CFPB has not issued any contrary interpretation and has cited the 40 Years Commentary in amicus briefs on other topics. See Moran v. The Screening Pros, LLC, 9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22.

and therein lays the issue here. A credit report is not the only consumer report that is

created from information in a CRA's file(s). The plain language of the FCRA requires,

among other obligations, that CRAs "clearly and accurately disclose to a requesting

consumer all information in the consumer's file at the time of the request." 15 U.S.C. §

1681g(a)(l). The court should take note that it does not say all **CREDIT** information in

the consumer's file.... (emphasis added) **ALL** information means just that... ALL

information in the file(s) outside of the exclusions as stated in 15 U.S.C. § 1681g(a)(l)(B)

and § 1681g(a)(2).

A legal "mandate" set forth as a "requirement" under law when not met after conditions

precedent to the requirement have been met and the corresponding required action to

trigger such an obligation under law takes place does not rise to the level of a legal

conclusion. 15 U.S.C. §1681g is just such a "mandate." The Equifax Defendants, by

cherry picking language and use of a clearly non-analogous case *(Gillespie)* would have

the court accept that Congress did not mean exactly what it said but meant to use words

that are simply not there.

The statute does not say "a consumer reporting agency shall provide the consumer with a

consumer file." The *Gillespie* case is a glaring red herring. First the plaintiff **was** pursuing

what the statute clearly outlines as "ancillary information" which, since it could not be

included in any report shared with a third party under any circumstances, does not have to

be shared with the consumer either. Here, the Plaintiff AT NO TIME requested any such

information. The Gillespie case is simply not analogous to this case. Plaintiff s request

letter was absolutely specific as to what he was asking for. In fact the language used to

describe his request was directly quoted from the statute. The actions employed by the

Equifax Defendants in this instance arise from two tactics; first to misrepresent the language of the statute and the interpretation of it within the FTC s official publication (fn1) and second, by failing to note other controlling sections in regard to 1681g in the statute.

The FCRA defines many different types of "files" all of which are considered to be "consumer files" such as files used in compiling investigative reports, employment reports, insurance related reports etc. however it is quite specific in relation to section 1681g. There the definition is clear *(page 31 of 40 yrs Doc.):*

Section 603 g defines "file," when used in connection with information on any consumer, to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

The definition does NOT contain the words "consumer file." The definition does not identify any *type* or *sub-type* of information, particular *type* of file or limitation as to the type of information contained in a file.

In addition the FTC interpretation takes the definition of what information is referred to by section 1681g even further (page 32 of 40 years doc) under "SCOPE" - The term "file" includes all information on the consumer that is recorded and retained by a CRA - regardless of how the information is stored - that *has been or might be* provided in a consumer report on that consumer. The term includes such information that a CRA has kept for archival purposes, because the definition includes all data "retained" and "stored" by the CRA."

This is where the omission of related sections comes into play. The phrase **"has been or might be"** is key. For instance: Section 605(a) provides time limits beyond which CRAs cannot include information in consumer reports, subject to exceptions set forth in 605(b). Two sub-sections of 605(a) are **key** to the type of information retained in a CRAs files on a consumer which cannot be included in a conventional credit report" such as can be obtained by a consumer through annualcreditreport.com, with important exceptions that the average consumer is not even aware of (page 55 of 40 yrs doc):

**PROVISION LIMITED TO ADVERSE INFORMATION**

4. The seven-year reporting period applies only to "adverse" information that casts the consumer in a negative or unfavorable light. CRAs are not bound by that seven-year limit in reporting dates of employment and educational histories, because such dates are not "adverse" information.

**RETENTION OF INFORMATION IN FILES**

5. CRAs may retain adverse information described in subsection (a) **and furnish it in reports** for purposes that are exempt under subsection (b), described below. For example, the CRA may retain obsolete information for the purpose of furnishing it to persons engaged in (1) credit transaction or the underwriting of life insurance involving a principal amount of $150,000 or more, or (2) the employment of any individual with an annual salary expected to equal $75,000 or more, (emphasis added)

Section 605(b) states that the time period limitations in section 605(a) **"are not applicable in the case of any consumer credit report** to be used in connection (1) a credit transaction involving, or which may reasonably be expected to involve, a principle amount of $150,000 or more; (2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $150,000 or more; (3) the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more."

These sections would lead even an unsophisticated reader to understand that when

information is "deleted" by reason of time limit prohibitions <u>for inclusion in a credit</u> <u>report</u> it isn't really deleted at all. Rather it is suppressed and **"may have been or might be"** disclosed without the consumer's knowledge to a third party under certain circumstances. This is just one example of the type of information which might be "archived" or considered "obsolete" by the CRA. Section 1681g clearly states that this information must be disclosed to the consumer when that consumer properly asks for it.

The FCRA defines "file" as all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored. 15 U.S.C. § 1681a(g). It couldn't be any clearer as to what is supposed to be provided upon a consumer's PROPER request.

The United States Court of Appeals for the Seventh Circuit has found that [t]he term "file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer. Gillespie v. Trans Union Corp.,* 482 F.3d 907, 909 (7th Cir.2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). The Seventh Circuit has held that, although a consumer's "entire file need not be disclosed upon request, "complete copies of their consumer reports must be disclosed upon request. *Id.* **The court should note the plural nature of "reports."**

The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and

is included in a credit report, Cortez v. Trans Union, LLC, 617 F.3d 688, 711 (3d

Cir.2010), or by using "corporate organization, reorganization, structure, or

restructuring." to circumvent reporting requirements. 12 C.F.R. § 1022.140(a). Jones v.

Equifax No. 3:15-cv-l 12-RJC-DSC United States District Court, W.D. North Carolina,

Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at

the plain language of the statute and case law.

**B. Plaintiff admits he received a copy of his credit report/disclosure from Equifax.**

Plaintiff readily admits he received a "credit file" from Equifax who he made the

request to, not EIS, which was described by Equifax as being "commonly called a

Consumer Credit Report and is **one type of disclosure**. There was no indication the credit

file was received from EIS. Mr. Gavin very specifically asked for something other than a

credit file or credit report. He requested a full consumer file disclosure which would

include all information in the consumer's file at the time of the request. 15 U.S.C. §

1681g(a)(l). The FCRA defines "file as "all of the information on that consumer recorded

and retained by a consumer reporting agency regardless of how the information is stored.

Id. § 1681a(g) The fact that Equifax sent Mr. Gavin a credit file does not equate to it

providing his requested full consumer file disclosure UNLESS it has no other information

in any of its files that relates to Mr. Gavin whether it has been or might be furnished in a

consumer report of any kind. If that is the case why don't the Equifax Defendants just

categorically state they have no other information in their files relating to Mr. Gavin in its

motion to dismiss?

It is not reasonable to believe the Equifax Defendants collect and maintain consumer

information on hundreds of millions of consumers for decades and Mr. Gavin is

somehow an exception and they have no other information whatsoever relating to him in

their file(s) other than the scant credit file that was provided upon his request. Mr. Gavin

is a consumer, has a driver s license, is a renter and has been a property owner and is 70

years of age. Is it plausible to believe that Equifax has no other information in its files

that relates to him at that age? What about all the information in the 106 pages of

consumer information in Mr. Gavin's LexisNexis full file disclosure provided to him that

showed a VERY substantial amount of the information in that disclosure was **sourced**

**from Equifax**? How could that be if the Equifax Defendants have no other information

in their file(s) than what was provided to Mr. Gavin in his credit file? It is not plausible in

the least that the Equifax Defendants have no other information relating to Mr. Gavin

than what was provided in his credit file of just several pages. The Equifax Defendants

are in the business of using Mr. Gavin as a commodity selling information about him but

could care less if the information they have is accurate and want to deny him the

opportunity to review whatever information they have for accuracy which is his right

under the FCRA.

Again, the court needs to stay on point that this case isn't about whether any information

related to Mr. Gavin that the Equifax Defendants have or may have provided to a third

party is accurate or not. The issue here is whether there was information in the Equifax

Defendants' file(s) at the time of Mr. Gavin's request that was required to have been

provided to him pursuant to his lawful request and wasn't. THAT is the sole claim in this

lawsuit and the only issue before this Court. Defendants' argument that Mr. Gavin

received the full consumer file disclosure that he specifically requested has no merit and should be rejected by the Court.

The Equifax Defendants argue that by Plaintiff s own admission they complied with § 1681g(a)(l) and relevant federal case precedent. Plaintiff has shown that they have done no such thing and actually have attempted to distort the record with factual inaccuracies. The Equifax Defendants erroneously argue that Plaintiff admits he received his full file disclosure when he received a copy of a credit report and the court should grant judgment on the pleadings which is patently false, misleading and wholly improper as there is not a motion for judgment on the pleadings before the Court.

### C. Plaintiff provides no actual basis for his assertion that the Credit Report he received was not his "full consumer file disclosure."

While in the past Mr. Gavin has used the website annualcreditreport.com to request a copy of his credit report in this case he did something different. As stated in his First Amended Complaint with the advent of the hack of the Equifax database and the ensuing media attention and firestorm it has created, Mr. Gavin became even more aware that there appeared to be additional information about a consumer in a consumer reporting agency s files than what was provided in a credit report that he obtained from annualcreditreport.com. This caused him to dig even deeper than he already had been to conduct research about the consumer reporting agencies and what kind of disputes there may have been in the courts as to the information they possess on consumers and the accuracy of it. He also intensified his already ongoing search for information in the public domain that might indicate there was more information that the CRA's held on consumers than was being disclosed in the credit reports provided by them either through

annualcreditreport.com or directly upon request to the individual CRA s. Of course, if a consumer only requests their credit report and that is forwarded to them in response to the request then the request has been satisfied.

After substantial reading and research it became apparent there was a considerable amount of information that was being provided about consumers to a plethora of entities and persons that was not necessarily directly related to specific credit accounts such as a mortgage, credit card or car loans yet which could potentially affect the consumer s creditworthiness or ability to do business, obtain employment, obtain housing or could affect numerous other aspects of a consumer's life. In one extreme case there was derogatory information in a consumer's file that stated in part:

**The file shows that you are very much disliked by your neighbors at that location [Millstone's Washington residence], and were considered to be a 'hippy type'. The file indicates that you participated in many demonstrations in Washington, D. C., and that you also housed out-of-town demonstrators during demonstrations. The file indicates that these demonstrators slept on floors, in the basement and wherever else there was room on your property. The file shows that you were strongly suspected of being a drug user by neighbors but they could not positively substantiate these suspicions. You are shown to have had shoulder length hair and a beard on one occasion while living in Washington, D. C. The file indicates that there were rumors in the neighborhood that you had been evicted by neighbors from three previous residences in Washington, D. C. prior to living at the 48th Street, N. W. location.**

which caused his auto insurance to be cancelled as a result of the credit report provided by O'Hanlon Reports, Inc., a CRA.s The information was later found to be patently false and uncorroborated.

---

5 Millstone v O'Hanlon Reports, Inc 383F.Supp. 269 (1974)

Needless to say, Plaintiff was appalled that such false information was obtained and even possessed about a consumer by a CRA and could have that kind of dramatic effect on a consumer's life. Upon further research Plaintiff found numerous other court cases brought in a number of jurisdictions involving erroneous criminal information that was provided by CRA's to potential landlords in certain instances and erroneous employment information provided by CRA's to potential employers where the consumer was denied employment as a result. It became obvious there was more information being provided to certain customers of CRA s than just listings of mortgage, credit card, car loan and other similar credit accounts that a consumer receives in his credit report and in a number of cases that information was erroneous with negative consequences to the consumer.

It would appear that the Equifax Defendants want to be treated as strictly a **Credit** Reporting Agency here when that is not the case at all. Equifax and EIS **operating** as one entity are a **CONSUMER** Reporting Agency under the FCRA. They collect, maintain and sell a plethora of **CONSUMER** information not just credit information. They provide only a credit report when a lawful request is made for a full consumer file disclosure of ALL information and attempt to convince the courts they have complied with the FCRA by doing so for purposes of litigation to escape liability. This must stop! For far too long Equifax and other major CRA s have diligently conditioned the courts, regulators and the public to think of a full file disclosure (which is precisely what a consumer is entitled to under the law **when a proper request is made**) as a credit report. A credit report contains only certain information (and is but one consumer report of many types) but not by any means all information they retain about consumers so what is provided and potentially subject to dispute is minimal. Clearly there is a financial incentive for them to

do so to minimize costs, in the name of profits. They skirt the requirement of providing complete file disclosures when requested and dealing with any disputes of the information contained in those files that might be erroneous which increases profits. Mr. Gavin has a right under the law to see ALL information in his consumer file(s) to review it for accuracy and dispute anything that is erroneous. That is all that he is interested in. Mr. Gavin made a request for a full consumer file disclosure, not a credit report, credit disclosure or any other thing related to "credit."

The Court should also take note that the annualcreditreport.com website (which was created and is maintained by the major CRA s) has **NO place on it where a consumer can request their full consumer file disclosure** but instead only provides the consumer with the option to request a credit report. How convenient... Sometimes one just has to look at the obvious. If Congress only intended that a consumer get a credit report, it would have simply stated exactly that in the statute rather than being very specific in the language of § 1681g stating a **full file disclosure is what is required upon a request.** Congress says what it means and means what it says when enacting a statute. A common sense reading of the plain language of the statute reveals there was to be more than just a credit report provided to the consumer upon a request for a full file disclosure.

Mr. Gavin made a request to LexisNexis (which is a company comparable to Equifax, Trans Union and Experian in size and a competitor) for his **full consumer file disclosure.** In response he received documents with the greeting Thank you for contacting LexisNexis to obtain your Full File Disclosure with **eight different consumer reports included just like Gillespie stated must be done.** (Emphasis added) The

disclosure from LexisNexis was 123 pages of information **(some of which was erroneous and dates as far back as 1990)** as stated in Plaintiff s First Amended Complaint *line 37*. LexisNexis is complying with the law. The Equifax Defendants are NOT.

The Equifax Defendants would have this Court believe that the only kind of consumer report that exists is a credit report so that is the only report they had to provide to Mr. Gavin upon his request for a **full consumer file disclosure** which is far from what the law requires. Mr. Gavin is entitled to the whole pie of consumer information not one thin slice.

There are numerous consumer reports that are generated by the CRA s from information they have in their files regarding such things as rental history, criminal background, public records, employment etc. so the argument that all the Equifax Defendants had to do is provide information to Mr. Gavin that is specific to one particular consumer report (a credit report) is fatally flawed.

The case law that the Equifax Defendants cite in their argument is off point, not analogous to this case and not persuasive to say the least. *United States ex rel. Doe v. Dow Chew. Co., United States ex rel. Willard v. Humana Health Plan of Texas, Inc. and United States ex rel. Williams v. Bell Helicopter Textron, Inc.* are all cases related to fraud and are not the least bit analogous to the case at bar. *United States ex rel. Rafizadeh v. Cont l Commo Inc.,* is entirely off point and inapplicable as is Lawrence v. Richman Group of Conn., LLC with information not being in the possession of a third party.

The Equifax Defendants argue that Mr. Gavin makes only conclusory statements and allegations based on speculation that he did not receive all the information that they possessed in their file(s) in the credit file that was sent to him. They apparently missed the allegations in Plaintiffs First Amended Complaint about the VERY substantial amount of information sourced from Equifax that was provided to Mr. Gavin in his LexisNexis full file disclosure comprised of **8 different consumer reports with much information sourced in large part from <u>Equifax</u>.** That was factually alleged in his First Amended Complaint *line 37.* The Equifax Defendants do not deny they provided the information contained in the LexisNexis report. They can't. It is ridiculous to argue that Mr. Gavin would have no basis to believe there was more information in the possession of the Equifax Defendants than was provided to him in a simple several page credit file when looking at the record. The Equifax Defendants arguments have absolutely no merit when looking at the facts on the record, Mr. Gavin First Amended Complaint and their motion should be denied.

## CONCLUSION

The Equifax Defendants know full well as a major long term player in the consumer reporting agency arena what the requirements of the FCRA are. They also know whether they have any information in their files that relates to Mr. Gavin that was not disclosed to him after his request. The fact the Equifax Defendants did not categorically state there is no additional information relating to Mr. Gavin as a consumer in their files or deny they provided the information in the LexisNexis full file disclosure in their Motion to Dismiss would leave a reasonable person, including this court, to reasonably assume there would be more information that was not disclosed as required under 15 U.S.C. § 1681g. The

Equifax Defendants' Motion to Dismiss should be denied and this case should go forward to Discovery to answer that question factually.

**WHEREFORE**, because the Defendants have failed to bring forth any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court DENY their Motion to dismiss and allow Plaintiffs claim to move forward to trial on the merits. In the event the Court finds that Plaintiff has failed to state a claim as alleged by the Equifax Defendants, Plaintiff requests leave of this court to file an Amended Complaint to cure any deficiencies identified by the Court.

Respectfully Submitted

Earl Gavin
300 Marion Ave
Gaffney SC 29341
Egav1986@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on the parties

listed below via email on the date below.

**Counsel for Defendant Experian Information Solutions, Inc.**
Lyndey Zwing
Adams & Reese LLP
1501 Main St 5th Floor
Columbia SC 29201

**Counsel for Defendant Trans Union, LLC**
Wilbur E. Johnson
Young Clement Rivers, LLP
PO Box 993
25 Calhoun Street, Suite 400
Charleston SC 29401

**Counsel for Defendant Equifax, Inc.**
Rita Bolt Barker
WYCHE
44 East Camperdown Way,
Greenville SC 29601-3512